UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| PATRICK RYAN SMITH, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:24-CV-169-KAC-JEM |
| SEVIER COUNTY, PATRICK MCCORMICK, MICHAEL HODGES, and QUALITY CORRECTIONAL HEALTHCARE, INC., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Now before the Court is the third amended complaint filed by Plaintiff Patrick Ryan Smith, a Sevier County Jail inmate proceeding pro se [Doc. 60]. For the reasons below, this action may proceed only on Plaintiff's Section 1983 claims that, during his Sevier County Jail confinement, (1) he did not receive medical care; including testosterone therapy, proper suboxone dosing, and mental health treatment; in violation of his constitutional rights due to policies of Defendants Sevier County and Quality Correctional Healthcare ("QCHC"); and (2) Defendant Patrick McCormick, individually, was deliberately indifferent to Plaintiff's medical needs.

**I.  REVIEW STANDARD**

Under the Prison Litigation Reform Act ("PLRA"), a district court must screen a prisoner complaint sua sponte dismiss any claim that is frivolous or malicious, fails to state a claim for relief, or is against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the

relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive a PLRA review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim. *Id.* at 681. And an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. But the Supreme Court has instructed that courts should liberally construe a pro se pleading and hold it to a less stringent standard than a pleading drafted by a lawyer. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## II. ALLEGATIONS

In his operative third amended complaint, Plaintiff alleges that when he entered the Sevier County Jail, he had a prescription for suboxone and had a severe testosterone deficiency [Doc. 60 at 6-8]. But during his confinement, he received improper dosing of suboxone because a custom or policy of Defendant Sevier County required him to take suboxone in a "whiskey shooting" manner rather than by allowing it to dissolve under the tongue [*Id.* at 8-9, 13]. As a result, Plaintiff suffered a seizure and other injuries [*Id.* at 9, 10].

Also, Plaintiff's testosterone therapy was allegedly abruptly stopped when he entered the Jail. This was due to Defendant Sevier County's "prohibited medication and treatment policy" and/or "security policy," and it was done despite Plaintiff making Defendants aware that he needed this treatment [*Id.* at 8-9, 13]. Because of the denial of testosterone treatment, Plaintiff suffered numerous injuries [*Id.* at 9, 10-11].

According to Plaintiff, Defendants QCHC and McCormick adopted and enforced the relevant policies of Defendant Sevier County that led to his improper suboxone dosing and the

2

denial of testosterone treatment [*Id.* at 11, 14]. Plaintiff also claims that, as of July 1, 2025, a new healthcare provider, specifically "Turn Key Health," began providing health care at the Sevier County Jail, and this provider has also denied his request for testosterone treatment and discontinued his suboxone as a punishment and retaliation "multiple times" [*Id.* at 11].

Plaintiff then states that "upon information [and] belief," Defendant Sheriff Hodges sent Plaintiff to Jefferson County Jail as a form of punishment [*Id.* at 12]. While at Jefferson County, Plaintiff did not receive medications while in booking and slept on the floor two nights [*Id.* at 12, 16]. Also, while in Jefferson County, Plaintiff was "falsely accused of being responsible for his cellmate failing a drug test," at which point his suboxone was discontinued for seven days, and he was placed in segregation [*Id.* at 12]. Plaintiff did not receive any "disciplinary due process" prior to being disciplined, which he states was a denial of his due process rights [*Id.*]. Plaintiff claims that this discipline was retaliatory and based on false information, and that a false report led to a Sevier County Jail doctor decreasing his suboxone dose for two and a half months [*Id.* at 15, 16].

Plaintiff then returned to the Sevier County Jail while experiencing withdrawal and became suicidal [*Id.* at 12]. He also had "to endure a jury trial while still enduring detox symptoms" [*Id.*].

Plaintiff then states that he has not received "outdoor, fresh air recreation" in approximately a year, and some "max inmates" have not received it for years [*Id.* at 13].

Plaintiff additionally claims that the only mental health treatment he received from Defendant QCHC was a Celexa pill, for which he was not warned of side effects and after which he suffered an adverse reaction [*Id.* at 14].

Plaintiff next states that on July 6, 2025, a Turn Key nurse discontinued his suboxone as retaliation for Plaintiff "questioning an abrupt policy change in the dosing protocol," which he classifies as punishment [*Id.* at 16].

3

Also, on December 17, 2025, Turn Key Health told Plaintiff they did not have suboxone for him [*Id.*]. Plaintiff states that this caused him mental and physical withdrawal symptoms [*Id.*]. He also states that this action was taken because he "fights back by filing complaints" [*Id.*].

As it specifically relates to Defendant McCormick, on March 19, 2024, Plaintiff saw Defendant McCormick and requested testosterone therapy and mental health treatment [*Id.* at 17]. He told Defendant McCormick about his medications, including Adderall, and health issues [*Id.*]. Defendant McCormick told Plaintiff that he would not get Adderall because it is a narcotic, which Plaintiff states was pursuant to "the draconian policies" [*Id.*]. On March 23, 2024, Plaintiff tried to drop off his medications in accordance with a nurse's instructions, but he "was denied by policy" [*Id.*]. On March 28, 2024, Defendant McCormick told Plaintiff that his testosterone was low but that he would have to wait to be retested [*Id.*]. This happened even though Plaintiff told Defendant McCormick about his injuries and showed him those injuries [*Id.*]. On April 11, 2024, Defendant McCormick told Plaintiff he had to wait two to three more months for testosterone therapy [*Id.*].

On December 10, 2025, a doctor at the Sevier County Jail verified Plaintiff's low testosterone through medical records but chose not to treat him due to Defendant Sevier County's policy prohibiting testosterone treatment [*Id.*].

According to Plaintiff, strobe lights and sirens were used to torture inmates, presumably during his Sevier County confinement, and this exacerbated Plaintiff's untreated conditions [*Id.* at 18]. On July 22, 2025, Plaintiff saw a Turn Key nurse and told her about his medical needs, including his need for testosterone therapy and mental health treatment, but this nurse told him that all he would receive was "lam[o]trigine," and he would not receive testosterone therapy due to Defendant Sevier County's policy [*Id.*]. On July 23, 2025, another nurse who also worked for

4

Defendant QCHC denied Plaintiff care for his spinal and testosterone issues, and this same nurse allegedly denied Plaintiff testosterone therapy in Jefferson County [*Id.*].

In the end, Plaintiff states that Defendants Sevier County and QCHC are liable under Section 1983 for their medication and security policies that purportedly violated his constitutional rights [*Id.* at 18-19]. He asserts that Defendant Sheriff Hodges is liable because he is Sheriff and for sending Plaintiff to Jefferson County in retaliation [*See id.*]. And he asserts that Defendant McCormick is liable for being deliberately indifferent to his medical needs [*See id.*]. He seeks to hold Defendants Sheriff Hodges and McCormick liable in both their individual and official capacities [*Id.* at 3]. Plaintiff seeks declaratory, injunctive, and monetary relief [*Id.* at 20].

## III. ANALYSIS

To state a claim under 42 U.S.C. § 1983, Plaintiff must plausibly allege that a person acting under color of state law deprived him a federal right. *See* 42 U.S.C. § 1983.

The Court begins with Defendant Sheriff Hodges. In his individual capacity, Defendant Sheriff Hodges is only liable if the allegations allow the Court to plausibly infer that he violated the Constitution through his own conduct. *See Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights"). Thus, he is not liable simply because he is Sheriff. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). The only allegation against Defendant Sheriff Hodges individually is the conclusory allegation that he sent Plaintiff to Jefferson County custody as punishment [*Id.* at 12]. Without any supporting facts, however, this conclusory allegation alone is not enough. The operative complaint includes no facts that would allow the

5

Court to infer that Plaintiff was transferred as punishment or even that Defendant Sheriff Hodges was the one who made the decision to transfer Plaintiff. Nor are there any facts to permit the inference that Defendant Sheriff Hodges was aware of, let alone intended, any of the circumstances that occurred once Plaintiff arrived in Jefferson County.

In Defendant Sheriff Hodges's official capacity, Plaintiff's claims are actually claims against the Sheriff's employer—Sevier County. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). As such, the claims against Defendant Sheriff Hodges are duplicative of Plaintiff's claims against Sevier County and unnecessary. So, the operative complaint does not state a Section 1983 claim against Defendant Sheriff Hodges. And the Court **DISMISSES** Defendant Sheriff Hodges from this action.

The case for Defendants Sevier County; QCHC; and McCormick, in his individual capacity, is different. There, liberally construing the operative complaint, Plaintiff has adequately alleged that, during his Sevier County Jail confinement, (1) he did not receive adequate medical care, including testosterone therapy, proper suboxone dosing, and mental health treatment, in a manner that violated his constitutional rights due to policies of Defendants Sevier County and QCHC, and (2) that Defendant McCormick was personally liable for providing inadequate care. So, these claims against Defendants Sevier County, QCHC, and Defendant McCormick, in his individual capacity, **MAY PROCEED** past initial screening. However, Plaintiff's claims against Defendant McCormick in his official capacity, are actually claims against his employer—QCHC. *See Kentucky*, 473 U.S. at 166. So the Court **DISMISSES** Plaintiff's official capacity claims against Defendant McCormick as redundant.

6

Next, the Court liberally construes Plaintiff's assertion that he has not received outdoor recreation in the last year as an attempt to assert a claim against Defendant Sevier County [*See* Doc. 60 at 13]. The law generally entitles a prisoner to sufficient exercise opportunities to maintain reasonably good physical and mental health. *See Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983). "[A] total or near-total deprivation of exercise or recreational opportunity, without penological justification" could violate the Eighth Amendment. *See Rodgers v. Jabe*, 43 F.3d 1082, 1086-88 (6th Cir. 1995). But neither the Supreme Court nor the United States Court of Appeals for the Sixth Circuit has "set a minimum amount of time a prisoner must have access to outdoor recreation." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003). Without a minimum amount of outdoor time required, courts routinely dismiss claims arising out of a general assertion of insufficient outdoor time. *See*, *e.g.*, *Jeffries v. Williamson Cnty. Jail*, No. 3:18-CV-00228, 2018 WL 4778197, at 4-5 (M.D. Tenn. Oct. 2, 2018) (collecting cases). Here too, the complaint fail to include facts that would permit the Court to infer a plausible Constitutional violation arising out of outdoor recreation. So, the Court **DISMISSES** that claim.

Finally, even liberally construed, none of the remaining allegations in the operative complaint allow the Court to infer that any *named* Defendant violated Plaintiff's constitutional rights. Because a defendant must generally be named in the operative complaint, *see* Fed. R. Civ. P. 8(a), and a violation of a federal right is required to state a Section 1983 claim against a named defendant, *see* 42 U.S.C. § 1983, the Court **DISMISSES** any other intended claims.

## IV. CONCLUSION

For the reasons above:

1. This action **MAY PROCEED** only on Plaintiff's claims that during his Sevier County confinement, (a) he did not receive medical care; including testosterone therapy, proper suboxone dosing, and mental health treatment; in violation of his constitutional rights

7

due to policies of Defendants Sevier County and Quality Correctional Healthcare; and (2) Defendant Patrick McCormick, in his individual capacity, was deliberately indifferent to Plaintiff's medical needs;

2. The Court **DISMISSES** Defendant Sheriff Hodges and all other intended claims;

3. The Court **DIRECTS** the Clerk to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Sevier County, Quality Correctional Healthcare, and McCormick;

4. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within twenty (20) days of entry of this order;

5. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

6. Service on Defendants Sevier County, Quality Correctional Healthcare, and McCormick must be made pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rule of Civil Procedure 4.04(1) and (10), either by mail or personally if mail service is not effective;

7. The Court **WARNS** Plaintiff that if he fails to timely return the completed service packets, the Court **will DISMISS** this action without further notice;

8. Defendants **MUST** respond to the operative complaint within twenty-one (21) days of the date of service. If any Defendant fails to timely respond to the operative complaint, it may result in entry of judgment by default against him; and

9. Plaintiff **MUST** immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen days of any change in address will result in the dismissal of this action.

**SO ORDERED.**

**ENTER:**

    /s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge